## BUTTFIELD v. BIDWELL et al.

(Circuit Court of Appeals, Second Circuit. July 18, 1899.)

No. 161.

COMMERCE—REGULATING IMPORTATION OF TEAS.

In the act of March 2, 1897, regulating the importation of teas, which provides that the secretary of the treasury "shall fix and establish uniform standards of purity, quality, and fitness for consumption of all kinds of teas imported into the United States," and prohibits the importation of any teas below the standards so fixed, the word "quality" is inserted in addition to the requirements of the former statute, and under such act it is competent for the secretary to fix a standard of quality, and to exclude from importation teas below such standard, although they are equal to the standard of purity, wholesomeness, and fitness for consumption in other respects.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion in circuit court, see 94 Fed. 126.

James L. Bishop, for appellant.

Edward B. Whitney, for appellees.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

PER CURIAM. The basic question in this case is as to the true construction of the act of congress of March 2, 1897, entitled "An act to prevent the importation of impure and unwholesome tea." Section 1 makes it unlawful "to import or bring into the United States any merchandise as tea which is inferior in purity, quality, and fitness for consumption to the standards provided in section 3 of this act, and the importation of all such merchandise is hereby prohibited." Section 2 provides for the appointment by the secretary of the treasury, immediately after the passage of the act, and on or before February 15th of each subsequent year, of a board of tea experts, "who shall prepare and submit to him standard examples of tea." Section 3 provides that the secretary of the treasury, upon the recommendation of said board, "shall fix and establish uniform standards of purity, quality and fitness for consumption of all kinds of teas imported into the United States," samples of such standards to be deposited in various custom houses, and supplied to importers and dealers at cost, and declares that "all teas, or merchandise described as tea, of inferior purity, quality and fitness for consumption to such standards shall be deemed within the prohibition of the first section hereof." Sections 4–7 provide for the examination of importations of tea, for a re-examination by the board of general appraisers in case of a protest by the importer or collector against the finding of the primary examiner; and for testing the purity, quality, and fitness

for consumption in all cases of examination or re-examination "according to the usages and customs of the tea trade, including the test of an infusion of the same in boiling water, and, if necessary, chemical analysis." The complainant alleges that the secretary of the treasury, assuming to act under the authority of these provisions, has fixed and established standards of purity, quality, and fitness for consumption of teas, but that the defendants, under regulations and instructions promulgated by the secretary, have continuously excluded from import into the United States, and threaten to continue to do so, teas in all respects equal to the said standards in purity, wholesomeness, and fitness for consumption, because the same were not of a taste, flavor, cup quality, appearance, color, or size of leaf equal to the said standards. Upon the legal theory that within the true meaning of the act of congress no teas are prohibited from import which are equal to the standards which have been established "in purity, wholesomeness, and fitness for consumption, and freedom from adulteration or extraneous matter," notwithstanding they are not of the quality in other respects required by the standards, the complainant insists upon the remedy of an injunction. The argument for the complainant in effect requires the word "quality," wherever used in the act of congress, to be eliminated, or, if not eliminated, to be read as a synonym for "purity" or "fitness for consumption." The history of the enactment shows that the word was industriously inserted to make the act a more stringent substitute for the existing legislation. By the act of March 3, 1883, then in force, any merchandise imported "for sale as tea," adulterated with spurious or exhausted leaves, or containing such an admixture of deleterious substances as to make it "unfit for use," was prohibited; and exhausted leaves were defined to include any tea which had been deprived of its proper quality, strength, or virtue by steeping, infusion, decoction, or other means. Thus the importation of tea containing such an admixture of leaves as to be deprived of its proper quality or virtue by any method of treatment was prohibited. That act, however, contained no provision for the establishment of government standards; and the establishment of uniform standards in the interest of the importer and of the consumer had become a recognized necessity. In a report by the senate committee on commerce, in 1897, the provision was suggested as designed, among other things, to protect the consumer against "worthless rubbish," and insure his "receiving an article fit for use." The report pointed out that the "lowest average grade of tea ever before known was now being used" by our consumers, and proposed as a remedy the establishment of standards of the "lowest grades of tea fit for use." As originally introduced in the house, the bill prohibited the importation of "any merchandise as tea which is inferior in purity or fitness for consumption to the standards provided in section 3 of this act." It was amended in the senate by inserting the word "quality" between the words "purity" and "fitness for consumption" wherever they occurred in the house bill. The amendment evinces the intention of the senate to authorize the adoption of uniform standards by the secretary of the treasury which would be adequate to exclude the lowest grades of tea, whether demonstrably of inferior

purity, or unfit for consumption, or presumably or possibly so because of their inferior quality. The house concurred in the amendment, and the measure was enacted in its present terms. We conclude that the regulations of the secretary of the treasury are warranted by the provisions of the act, and for this reason that the complainant is not entitled to an injunction. This conclusion renders it unnecessary to consider the other objections which have been urged against his suit. The order denying a preliminary injunction is affirmed.